Please be seated. Good morning. Our first case is Robbicki v. Chiang. Mr. Walters. You may proceed. May it please the court. Today we're here on an appeal from the PTAB and specifically on an interference decision. The focus in this case is on the etching step of Chiang's claims 31 and 66. That step reads in part, etching the first portion of the diffusion barrier at the bottom of the plurality of vias without fully etching through. Mr. Walters, you essentially want to define etching as net etching. Is that a quick summary? Your Honor, yes, and it's a thinning. It's more removal than deposition. But the problem is, one problem that I see is that the specification refers to etching and net etching quite a great deal and does not use them interchangeably. How then can we give the same meaning to terms that throughout the specification seems to have been used separately with separate meanings? Actually, it's really not used with separate meanings, Your Honor. But it's certainly not used interchangeably in the sense that if you look at column 4 of the Rizvicki patent, and specifically at lines 9 through 17, it states there that in this invention there are three E over D scenarios created by control of process conditions. In each one of those scenarios, Your Honor, the E over D is greater than one. So the invention only has three scenarios, and in every one of those scenarios it requires more etching than deposition. And when it refers to the step, the application of that step to a layer, it refers to that as etching, which is more in column 6 of the Rizvicki patent. What the focus of the board and Chang is, is on individual atoms. And their construction of the claim suggests that if you remove individual atoms from the layer at the bottom of the via, that's enough for etching, even if you increase the thickness of the layer at the bottom of the claim doesn't talk about making a deposit at the second stage. It only talks about etching, which the board construed as removal. So everybody seems to be assuming that the claim is describing a second stage at which there's both deposit and etching, and yet I don't see that in the claim. Part of that is because of the way the etching step is that will project down at the bottom of the via, and those ions can either stick or they can knock other ions away. And what happens in this is you can have some atoms at the bottom of the via that are removed. The claim seems to describe the second step, that there's depositing at the bottom of the via. Am I mistaken about that? It doesn't say anything. It does not specifically state that there is deposition going on at the bottom of the via in the claims. That's part of our point with this entire case, is Chang's specification describes two deposition steps. The purpose of their invention is to first deposit a protective barrier layer. Does your invention require a deposition at the bottom of the via step as part of the second step where the etching and depositing elsewhere takes place? What it requires at the bottom of the via is more removal of material than deposition. I don't think you're answering my question. Does it contemplate depositing at the bottom of the via in the second step? I think it does contemplate that there is an E over D, meaning that some atoms can be removed and some atoms can be deposited, but that E over D has to be contemplated throughout your written description, but you've got problems with the claim language itself. As Judge Dyke points out, the only deposition that's referred to is depositing a second portion of the diffusion barrier elsewhere on the wafer substrate. Where do you have any reference to depositing on the bottom of the via in Claim 1? In Claim 1, there is no specific reference to depositing at the bottom of the via. However, you don't have to assume that at all. What you need to look at is what the intent was by reciting the etching step at the bottom of the via. Under the board's own construction, etching means removal, so under that construction of the claim at the second step, there's etching, there's removal. It doesn't say anything about deposits at the bottom of the via. That is correct, but what they contemplate is that you can have some removal, removal of atoms, but you don't have to have a thinning of the layer. That is more removal than there is deposition. We think that's an improper construction, and that's why Chang does not properly disclose the invention as properly construed. When you say more removal than deposition, again, at the bottom of the via, there is etching, and it says that you take some of the barrier material away, but not all of it. That's what your claim says, and then it says you deposit barrier material elsewhere. Correct. I'm not sure I understand what you're talking about as more deposition than removal at the bottom of the via. You mean more left behind? No, Your Honor. With this type of a process, you have ions that are impinging upon the bottom of the via. Some will stick. Others will knock other atoms away. What we're saying is more atoms are knocked away at the bottom of the via than stick, and that's the way these processes work. You mean that's part of the etching process? That is part of the etching process when you use a plasma ion system. So you will have some atoms that will stick. You will have some atoms that will knock other atoms away. What we're saying is you take and you remove more atoms than what stick. What the Board is saying, and what Chang is saying, is that if you look at an individual atom, as long as you knock one atom off, that's the way you use the language in your claims. So in Claim 1, you refer to etching, and it only refers to removing some portion of the bottom of the via, but less than all of it, or leaving more than you take away. It does not say anything about depositing anything at the bottom of the via. Then you go to other claims, and you actually have the ratio that you talked about before that is specifically claimed as a dependent claim. So how are we supposed to assume that etching doesn't have the broader meaning? Because if you look at, again, Column 4 and Column 6, where we describe only three scenarios of the invention, only three. This is exclusive. This is not us limiting to one preferred embodiment. This is the only embodiment. In every one of those scenarios of the invention, it describes E over D as greater than 1. That means more material is removed than what is deposited at the bottom of the via using this system. Don't you have a claim differentiation problem, though, when you look at Dependent Claim 27? Your Honor, I guess, first of all, with claim differentiation, it's a guide, and it should not take away from the clear teachings of the specification. Moreover, with those claims that are pointed to in terms of having E over D ratios, those ratios are describing not only at the bottom of the via, but also in other places, such as the field. So there are additional limitations in those claims. I would suggest that reading the specification and construing the claims in light of the specification is a much stronger indication than the claim differentiation argument, because there is already claim differentiation. Mr. Walters, you keep referring to atoms, and more atoms are knocking away than are sticking, but how does that equate with the barrier material, which is what the claim is talking about? Very good question. Are these atoms the barrier material? So that's part of the problem here, Your Honor. In the process, you have a first deposition step, and that deposition can be deposition of, for example, tantalum. Once that first deposition occurs, what Rusvicki teaches is you want to thin that layer because of resistance. The way to reduce resistance is to thin. So in the second step, what is done is you etch, and you have to remove a resistance. When you etch, you can have some atoms of tantalum hitting the bottom previously deposited tantalum layer that will stick. If you have more that stick at the bottom, you will have an increase in the thickness. If you have more atoms hitting the bottom that strike and knock away existing tantalum atoms from that first Here, we're saying that etching, you should look at the layer, not what might happen to an individual atom, because if you only look at what happens to an individual atom, then you can have an increase in the thickness at the bottom of the via. That goes against the entire purpose. It's the antithesis of the Rusvicki invention. Rusvicki clearly shows and tantalum or barrier layer atoms off than what stick in that etching process. Let's assume that you're right about that, about the net etching construction. And I understand what the board did on reconsideration, was it said, well, you lose even if you're right about the claim construction, because Chang is disclosing net etching in example three. And so what's your decision? They pretty much gave a short review of Dr. Rusvicki's testimony, because they did not agree with his claim construction. They also then referred only to the language of the Chang specification and what it discloses. And if you turn to the Chang specification, you'll note that it does not mention reducing resistance of the barrier layer. But we're in a substantial evidence situation. The Chang had an expert declaration. And so don't we have a problem in second-guessing the board's factual determination as to what Chang disclosed when they say that Chang disclosed net etching? So what we are arguing, Your Honor, is that the board only relied on the text of the specification. And the text of the specification does not provide substantial evidence that Chang disclosed the claimed invention. The reason why we say that is if you look at example three, which they relied upon, there is just one statement in example three that says, during the second deposition period, tantalum from the first deposition period was re-sputtered, with excess tantalum being removed from the upper opening and reshaped near the area of Nevada. So we're talking about a deposition step. They say that there is removal at the top of the via. Where's the deposition occurring if there's removal at the top? Because we're talking about a deposition step. Moreover, if you compare the figures, figures three and four, you will see that they both have a narrowing at the opening at the top of the via. What the board is saying is, example three is a combination of example two, then one. However, in figure five, it doesn't show a narrowing of the opening of the via. Moreover, if you compare the steps in example three with the steps in examples two and one, you will see that the process parameters are not the same. Mr. Walters, you've consumed your time. We'll restore three minutes rebuttal for you, and we'll give Mr. Kenney an extra three minutes if he needs to use it. Thank you. Thank you, everyone. May I please record? As Judge Dyke noted, there are two independent grounds for affirming the board's judgment. One is that the board found written description support with Risbicky's proposed construction, and substantial evidence supports that and interprets the term etching in light of the teachings of etching and net etching in the 977 patent. On the claim construction issue, the board said it was using the broadest reasonable construction. You in your red brief don't depend on that, but does it make sense to use the broadest reasonable construction in this context where you're assessing the rights of respective parties and you're assessing them in light of an issued patent? Yeah. For decades, broadest reasonable construction has been used in interferences, and in fact, looking back in the history of the broadest reasonable construction standard, I believe interferences was the first place it was mentioned. Both parties urged the broadest reasonable construction standard before the board. I agree with you. In this particular case, it's our position that ours is the only reasonable construction, so it is not of that much significance, but the construction is broader than the one that Risbicky proposed. But it really doesn't seem to make much sense to use broadest reasonable construction where you're talking about competing rights of two applicants, does it? But, I mean, I think that's the issue before Congress today in that PTO proceedings and PTO construction where there's a right to amend, and Risbicky had the right to amend, involves currently the broadest reasonable construction. I mean, the difference between this and the district court proceeding is that Risbicky had the right to amend their claims as well as we had the right to amend our claims, and that usually is the major justification for the broadest reasonable construction standard. But if maybe I can address first substantial evidence supporting the board's finding even with Risbicky's proposed construction of net etching, counsel mentioned the re-sputtering with reshaping at the bottom of the via. And counsel repeated the argument that was made to the board by Risbicky that that re-sputtering was confined to the top of the wafer substrate structure. The issue here is whether a reasonable fact finder could reach the opposite conclusion, and there's ample evidence for a reasonable fact finder to reach the opposite conclusion here. Our expert, Dr. Cuomo, testified in the 977 patent support his testimony that re-sputtering would not be limited to the top of the via. It's not scientifically possible. The etching effects are greatest at the bottom, and that's taught by the 977 patent, Risbicky's own patent. That's substantial evidence supporting the board's finding of net etching at the bottom of the via. In addition, the application teaches that the availability of material from the first deposition step protects the bottom of the via from breakthrough. As our expert testified, breakthrough is only possible if net etching is occurring. So again, this is a confirmation of net etching occurring at the bottom of the via. But is it true that you could end up with a circumstance where you had more at the bottom? You actually thickened the layer at the bottom of the via, as your friend on the other side argued? Not in the context of example three. I mean, the expert testimony and the scientific analysis establishes that the etch-to-deposition ratio is more than one. I mean, Dr. Cuomo did its peer-reviewed literature that established that the etch-to-deposition ratio was greater than 1.2 with the most conservative assumption, above 1.9 with more likely assumptions. So no, as a scientific fact, example three, based on this record, is net etching at the bottom of the via. Maybe, but the claim construction would allow more deposits than etching, right? Yes. I mean, the claim construction independent grounds for affirming the board's judgment. But yes, the 977 patent uses the term etching broadly. And it uses the term net etching to define the situation where etching exceeds deposition. And there are claim limitations that recite etch-to-deposition ratios greater than one. And what's happened to those claims? Are those claims not subject to the chain priority? No, those claims are. The board found written description support for all of the claims that are currently pending on appeal, including those that recite the etch-to-deposition ratio greater than one at the bottom of the via. There were some claims that they eliminated for reasons unconnected to the briefing here. But the claims that recite the etch-to-deposition ratio of greater than one, including, for example, Chang Claim 47, the board found written description support. Well, what would happen here if Rosbicki amended Claim 1 to clarify that it resulted in net etching? Well, it's our claims that are being challenged. So Rosbicki can't amend our claims. And the point was that this is only being interpreted in light of the Rosbicki patent because we copied their claims to provoke the interference. So we could amend and change the claims, but any amendments that they were to make... Are you getting net etching claims as a result of this?  Net etching at the bottom of the via. And yes, Chang Claim 47 was found allowable by the board. And Chang Claim 47 is one that corresponds to Rosbicki Claim 27, right? Correct. So yeah, the board, by necessity, had to address written description support for net etching because it was expressly recited by... And that's your explanation for why they had to address it in the reconsideration? They addressed it in the original decision. They addressed it in the original decision and they also addressed it in reconsideration. But that's your view as to why they had to address that because Chang Claim 47 is specific about net etching, and so it has to be supported by written description and specification. Yes. Yes, Your Honor. So you think we could affirm the board's determination without breaching the question of the claim construction of Claim 1? Absolutely, Your Honor. But then that would leave open the question of ultimately whether it required net etching for purposes of any challenge in the future or any infringement action in the future. Well, I'm not sure that any alleged infringer would be bound by this court's ruling anyway. I mean, they would have the right to independently raise claim construction issues because they're not... I mean, unless the alleged infringer was the other party in this interference, I think they would have the right to reopen and challenge claim construction issues. So what you're saying is that we can't dispose of this case on the claim construction because that doesn't answer the question of written description support for Claim 47 of Chang. That's correct. You would still have to address the issue of net etching with respect to Claim 47. I'm not sure that the other side has argued that on appeal, but certainly the board was forced to address Claim 47 and net etching for that reason. The board made credibility determinations, which always seem a little odd to me when it's just on paper. I mean, admittedly, you can make credibility determinations from paper documents, but what was it about your experts' documentary support that they found should justify a credibility determination as opposed to simply an examination of the facts asserted? I think there was various aspects of how the two experts handled themselves in cross-examination that the board read that could lead to a credibility determination. I think there's a variety of different factors. I think that the other side's expert, even on claim construction, would admit that the E and the E to D ratio was the removal of material, but then he'd go so far as to admit the E was three, but he wouldn't admit it was etching, when everybody could read and follow that that was exactly what was occurring. He was saying that net etching was bad use of English. He would change his positions in the middle of the cross-examination. He was not really forthright coming forward or acknowledging things. And then I think the technical analysis, which admittedly the board did not expressly address, but is set forth in our briefs, the fact that their expert did a technical analysis and was unable to use any peer-reviewed stuttering yields to show a lack of net etching and had to generate his own data for this interference, which conflicted with the peer-reviewed data always to Rizvicki's benefit by a significant margin as we set forth in the brief. But I don't understand that that was the reason for the board rejecting their expert. The board rejected their expert because they said he used the wrong claim construction, which seems to me, based on what you've been saying, is a logical flaw in the board's analysis because you're saying that even under the net etching construction, there had to be a determination of which expert was correct about whether Chang satisfied the net etching limitation because it had to reach that in connection with Claim 47. It seems to me under those circumstances it makes no sense to dismiss their expert on the ground they used the wrong claim construction when even under your view, the Rizvicki claim construction has to be used in evaluating Claim 47 of Chang. What's wrong with what I'm saying? I think the board reached a bigger decision than just the credibility of claim construction. Rizvicki argued to the board. If they had relied solely on the claim construction, that would be wrong, right, in addressing Claim 47? There were factual issues for claim construction, factual issues of literally what does the term net etching mean? No, but you're not answering my question. If I were correct that the board dismissed their expert on the ground they used the wrong claim construction, that simply is not a tenable ground for dismissing the consideration of that affidavit with respect to Chang Claim 47 because in Chang 47 you have to use the net etching construction. I agree, Your Honor. If the board had merely said it used the wrong claim construction and therefore we are going to ignore his testimony, that would have been an error, but I don't think that's what they did. Could you show me where they did something else? Sure. Sure. If you look at the request for re-hearing, if you look at the request for re-hearing or the decision on re-hearing, Rizvicki specifically asked, and this is on A38 to A39, Rizvicki specifically argued that the board had failed to consider its expert's testimony. And the board specifically responded in saying they did not. They summarized that testimony at pages 11 to 13 of their opinion, and then they said they didn't overlook it, but they found that testimony to be less credible than that of Chang's expert. The testimony that's summarized is not just claim construction. The testimony that is summarized on pages 11 to 13 of the original opinion includes his interpretation of what was happening in the 671 application, specifically what was happening in Example 3. So my hesitation on the claim construction is I do think that in making factual assertions on claim construction, if those factual assertions are so incredible, that that can go to the witness's credibility on other issues. But I think what we've seen here is that the board didn't just consider his testimony regarding what the term etching should mean, but also what the examples taught. And as the board said, looking at this scientifically, the application does not make sense when one interprets it as limited to deposition only in the second step of the example. But I mean, if we go through pages 11 and 12 of the board's decision, there is a summary right there. And the board talks about the three examples, talks about the reshaping, the tantalum, and this is what the board found not to be credible on the part of Dr. Ruzic, which goes to the very heart of whether there is net etching in the example. Where do they say that in the opinion? Well, they go through in the rehearing. They said they just summarized his testimony. You have to flip through both. But the request for rehearing says the decision summarizes Dr. Ruzic's testimony at pages 11 to 13. Okay, but where do they say we don't find it credible for some reason other than his adopting the wrong claim construction? The only indication we have here is in the rehearing. The decision summarizes the testimony. The board did not overlook this testimony, but it found the testimony to be less credible. And it talks about the testimony that's set forth. Okay, but that's not saying it's less credible for reasons other than the wrong claim construction. Well, but the testimony they're talking about is the fact that there's only reshaping, that it's limited to the top. You know, so that's what we have in the board's view. But, you know, we have ample basis here on the record to support the board's findings and even the findings on credibility. Mr. Kenney, moving away from the claim construction to the written description again, how does Chang account for the differences between Example 3 and the other examples, the temperature, the duration, the narrowing at the top? Well, this was the subject of expert testimony. First of all, the narrowing at the top, Example 1 is not described in the text as having any problems with the top of the via. This is an interpretation that was provided. It actually is defined. Example 1 is mentioned as having good structure on the top of the via. So it's a combination of Example 1 and Example 2. Example 2 is performed for only a very short period of time. In Example 3, this was the subject of expert testimony. The expert did say that the teachings of Example 1 were combined with the teachings of Example 2 to give Example 3. The key feature for whether net etching is going to occur is the substrate bias. Our expert analyzed the substrate bias in both Example 1 and Example 3. Both, under his analysis, produced net etching at the bottom of the via. Both are described as being sufficiently high substrate biases. The burden of proof was on the other side, and they provided no proof that etching would occur with only Example 1 and not with Example 3. Our expert provided proof that net etching occurs with both. Thank you, Mr. Kennedy. Anything further? I'll just double-check one more comment. So in looking at the bottom of the vias and the structures in the Figure 3, you can see that the board found that the etching-only process provides particular etching effects in the middle. The deposition-only process provides particular deposition in the middle with gaps at the ends. The combination gives the structure that was disclosed in Figure 5. As the board said, the application doesn't make sense without net etching in the second step. That is what it's all about. The net etching distributes the material, produces the shape that's desired, avoids the diffusion in the corners. Finally, on the claim construction issue, the specification in the 977 clearly distinguishes etching and net etching. Etch-to-deposition ratios are specifically defined. Etching, as the 5.3.2 analysis of Dr. Rusak and Schell, can produce a layer that ultimately is thinner than it otherwise would be. Even if it doesn't result in net etching, both parties wanted to encompass that in their claims. Thank you very much. Thank you, Mr. Cannon. Mr. Walters, you have three minutes. I'd like to direct the court to the figures in the Chang application, and specifically page 1210 of the appendix. Figure 3 is right on top of Figure 4. That's Example 1 and Example 2 from the specification. You can clearly see in both of those figures that there is a narrowing at the top of the via. There is a narrowing at the top of the via. If you combined those two figures, you would get a further narrowing at the top of the via. You would not get what is shown in Figure 5, which has no narrowing at the top of the via. When counsel said that there was no narrowing at the top of the via in Example 1, just look at Figure 3. It shows it. It also doesn't say that at the top of the via there's no problem at the top of the via. They just say it's not as big of a problem as it is in Example 2. Figure 3 and 4, just looking at them, shows that Example 3 cannot be a combination of Examples 2 followed by 1. In terms of the calculation of the thickness at the bottom of the via, you can do this calculation very easily. It's in the briefs. You can use the deposition rate from Example 2 and you'll find that it's 5 angstroms per second. You apply that times 15 seconds, which is what Example 3 used. You get 75 angstroms. They say that the final thickness... Your expert just ignored all these peer review analyses and decided that he had to go at it alone in order to get to the result he wanted. There was no ignoring of peer review references. I'm not exactly sure what's being referred to here is, but in addition to the basic calculations, the things that you can do yourself without any problem, simple math. He did a Trident sputter yield analysis, which is very sophisticated software. He also used semi-empirical data from many different references. He did this three different ways. And why did he do the last two ways? Because he recognized that Example 3 was not a combination of Example 2 followed by Example 1. In fact, you cannot say that Example 3 is an implicit or inherent disclosure of the claimed invention because it does not even provide all the process parameters that are necessary to know what you might get at the bottom of the via. For example, the gas that's used in the plasma. Everyone talked about argon, but the specification, the Chang example, doesn't even say what the gas is. Not all the process parameters are there. We told the Patent Office that Chang should have repeated these examples, and the Patent Office says back to us, well, you didn't repeat the examples. Do you have a final thought for us, Mr. Walters? I'm sorry? Do you have a final thought for us? Just completing that thought, it's not Rusbicki who had the equipment to be able to repeat the example. It was Chang. They're the owners of that equipment. Thank you, Your Honor. All right. Thank you.